No. 25-10784

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

RACHELLE RAND, ESPERANZA GOTTSCHAU, RAMON SOTO,
GEORGIANNA LASH, and AARON MEES,
*Plaintiffs–Appellants*,

V.

EYEMART EXPRESS, L.L.C.,
*Defendant–Appellee*.

On Appeal from the United States District Court
for the Northern District of Texas
No. 3:24-cv-00621-N
Hon. David C. Godbey

## PRINCIPAL BRIEF OF APPELLANTS

Patrick Yarborough
Jeffrey Lucas Ott
**FOSTER YARBOROUGH PLLC**
440 Louisiana Street, Suite 220
Houston, Texas 77002
Telephone: (713) 331-5254
Facsimile: (713) 513-5202
Email: patrick@fosteryarborough.com
Email: luke@fosteryarborough.com

[Additional Counsel on Signature Page]

*Attorneys for Plaintiffs–Appellants*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or refusal.

All persons with a financial interest in the outcome of this litigation are as follows:

*Plaintiffs–Appellants*

> Rachelle Rand
> Esperanza Gottschau
> Ramon Soto
> Georgianna Lash
> Aaron Mees

*Defendant–Appellee*

> Eyemart Express, LLC

*Counsel for Plaintiffs–Appellants*

> Patrick Yarborough
> Jeffrey Lucas Ott
> FOSTER YARBOROUGH PLLC
> 440 Louisiana Street, Suite 1800
> Houston, Texas 77002
> Telephone: (713) 331-5254
> Facsimile: (713) 513-5202

> Mark S. Reich
> Gary S. Ishimoto
> LEVI & KORSINSKY, LLP
> 33 Whitehall Street, 27th Floor
> New York, New York 10004
> Telephone: (212) 363-7500
> Facsimile: (212) 363-7171

***Counsel for Defendant–Appellee***

Andrew Newman
POLSINELLI PC
2950 N. Harwood Street, Suite 2100
Dallas, Texas 76005
Telephone: (214) 661-5506
Facsimile: (214) 397-003

*/s/ Patrick Yarborough*
Patrick Yarborough

Attorney of Record for Appellants

# STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 5th Circuit Rule 28.2.3 and Federal Rule of Appellate Procedure 34(a)(1), Appellants respectfully submit that oral argument would assist the Court in resolving this appeal. The case presents important questions regarding the scope of the party exception under the Federal Wiretap Act, 18 U.S.C. § 2511, as well as the breadth of data that constitutes PHI pursuant to HIPAA, and the pleading standard applicable to a motion to dismiss where data only accessible to a third-party is at issue.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF CONTENTS .................................................................................. iv

TABLE OF AUTHORITIES .............................................................................. vi

INTRODUCTION ............................................................................................. 1

STATEMENT OF JURISDICTION .................................................................... 2

STATEMENT OF ISSUES PRESENTED FOR REVIEW ................................... 3

STATEMENT OF THE CASE ........................................................................... 4

    I.     Factual Background ............................................................................... 4

    II.    Procedural History ................................................................................ 9

    III.   The District Court's Order Granting Eyemart's Motion to Dismiss .........10

SUMMARY OF THE ARGUMENT ..................................................................12

STANDARD OF REVIEW ...............................................................................13

ARGUMENT....................................................................................................13

    I.     The District Court Improperly Applied the Wiretapping Claims' Statutory Framework Pertaining to the Exceptions Under 18 U.S.C. § 2511(2)(d) ..........13

        A. The District Court Incorrectly Assumed Eyemart was Entitled to the Party Exception ..................................................................................................14

    II.    The District Court Erred in Holding Eyemart Did Not Disclose PHI to Meta .................................................................................................................19

        A...Prescription Plaintiffs Sufficiently Plead Eyemart Disclosed PHI to Meta ...................................................................................................................20

B. . Search Plaintiffs Sufficiently Plead They Communicated PHI to Eyemart, Which Was Then Disclosed to Meta ........................................................... 23

C. ..... Prescription and Search Plaintiffs Should Have Been Granted Leave to Amend ..................................................................................... 26

III.   Finding That Eyemart Disclosed Plaintiffs' PHI to Meta Revives All Claims ........................................................................................... 27

CONCLUSION ................................................................................. 29

# TABLE OF AUTHORITIES

## Cases

*A.D. v. Aspen Dental Mgmt., Inc.*,
No. 24-C-1404, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024)..............................24

*Am. Hosp. Ass'n v. Becerra*,
No. 4:23-cv-01110-P, 2024 WL 3075865 (N.D. Tex. 2024) ............................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ....................................13

*Berry v. Funk*,
146 F.3d 1003 (D.C. Cir. 1998) ........................................................................17

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ............................................................17

*Calhoun v. Google, LLC,*
113 F.4th 1141 (9th Cir. 2024)..........................................................................17

*Cina v. Cemex, Inc.*,
No. 4:23-CV-00117, 2025 WL 2294331 (S.D. Tex. Aug. 8, 2025) ..................20

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. Nov. 17, 2023).................................................24

*D'Angelo v. Penny Opco, LLC*,
2023 U.S. Dist. LEXIS 191054 (S.D. Cal. Oct. 24, 2023).................................21

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024).............................................................21

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025).....................................................20

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023)........................................................1, 21

*Dussouy v. Gulf Coast Inv. Corp.*,
660 F.2d 594 (5th Cir. 1981).............................................................................27

*Ferrer & Poirot, GP v. Cincinnati Ins.*,
 36 F.4th 656 (5th Cir. 2022)...................................................................13

*Garrett v. Kohls Distrib. Efulfillment Ctr.*,
 2024 WL 3237184 (N.D.Tex. June 7, 2024) ........................................22

*Gurmankin v. Costanzo*,
 626 F.2d 1115 (3d Cir.1980) ...............................................................16

*Heerde v. Learfield Commc'ns, LLC*,
 741 F. Supp. 3d 849 (C.D. Cal. 2024) .................................................17

*Hernandez v. Ikon Office Solutions, Inc.*,
 306 F. App'x 180 (5th Cir. 2009) ........................................................27

*In re Meta Pixel Healthcare Litig.*,
 647 F. Supp. 3d 778 (N.D. Cal. 2022)..................................................18

*In re Pharmatrak, Inc.*,
 329 F.3d 9 (1st Cir. 2003) ....................................................................17

*In re Volkswagen of Am., Inc.*,
 545 F.3d 304 (5th Cir. 2008) ...............................................................16

*Jancik v. WebMD LLC*,
 No. 1:22-CV-644-TWT, 2025 WL 560705 (N.D. Ga. Feb. 20, 2025) ...............23

*Jonathan Lynch, Plaintiff, v. Express Scripts Holding Company, Defendant.*,
 No. 23-CV-01170-AMO, 2025 WL 2224419 (N.D. Cal. Aug. 5, 2025)............18

*Jones v. Greninger*,
 188 F.3d 322 (5th Cir. 1999)................................................................19

*Khoja v. Orexigen Therapeutics, Inc.*,
 899 F.3d 988 (9th Cir. 2018)................................................................22

*Langnes v. Green*,
 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1931) ..............................16

*Lexos Media IP, LLC v. Overstock.com, Inc.*,
 No. 22-CV-2324-JAR-ADM, 2023 WL 3119600 (D. Kan. Apr. 27, 2023)........20

vii

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009)...............................................................19

*Lovick v. Ritemoney, Ltd.*,
   378 F.3d 433 (5th Cir. 2004)...............................................................19

*Lugo v. Inova Health Care Servs.*,
   No. 1:24-CV-700 (PTG/WEF), 2025 WL 905191 (E.D. Va. Mar. 25, 2025) .....28

*Mekhail v. N. Mem'l Health Care*,
   726 F. Supp. 3d 916 (D. Minn. 2024) ................................................15

*Nguyen v. Bank of Am., NA*,
   No. CIV.A. G-11-290, 2012 WL 33203 (S.D. Tex. Jan. 6, 2012).....................19

*Nienaber v. Overlake Hosp. Med. Ctr.*,
   No. 2:23-cv-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025).............26

*Q.J., v. Powerschool Holdings, LLC,*
   No. 23 C 5689, 2025 WL 2410472 (N.D. Ill. Aug. 20, 2025) ...........................15

*R.C. v. Walgreen Co.*,
   733 F. Supp. 3d 876 (C.D. Cal. 2024).........................................24, 26

*Sanchez Oil & Gas Corporation v. Crescent Drilling & Production, Inc.*,
   7 F.4th 301 (5th Cir. 2021) ................................................................19

*Smith v. Loyola Univ. Med. Ctr.*,
   No. 23-CV-15828, 2024 WL 3338941 (N.D. Ill. July 9, 2024) .........................24

*Sweat v. Houston Methodist Hosp.,*
   No. CV H-24-775 (S.D. Tex.)...........................................................16

*Sweat v. Houston Methodist Hospital*,
   No. CV H-24-775, 2025 WL 2697111 (S.D.Tex. Sept. 22, 2025).....................28

*Sweat, v. Houston Methodist Hosp.*,
   No. CV H-24-775, 2024 WL 3070184 (S.D. Tex. June 20, 2024).....................16

*Taylor v. Root Insurance Company*,
   109 F.4th 806 (C.A.5 (Tex.), 2024)...................................................13

*United States v. Ortiz-Lopez*,
  651 F. Supp. 3d 855 (W.D. Tex. 2023) ............................................................. 17

## Statutes

42 U.S.C. § 1320d-6 ................................................................................................. 8

42 U.S.C. § 1320d-6(a)(3) ...................................................................................... 24

Federal Wiretap Act 18 U.S.C. § 2511(1) .............................................................. 7

Federal Wiretap Act, 18 U.S.C. § 2511(2)(d) ................................................. passim

Illinois Eavesdropping Statute ("IES"), 720 ILCS § 5/14-1, *et seq* ...................... 7

Missouri Wiretap Act, R.S. Mo. § 542.400, *et seq* ............................................... 7

MO. REV. STAT. § 542.402.2(3) ............................................................................ 8

## Rules

FED. R. CIV. P. 15(a)(2) .......................................................................................... 27

# INTRODUCTION

From managing prescriptions for nearsightedness or astigmatism to scheduling essential eye exams, millions of Americans reasonably expect that the personal health information they share in pursuit of vision care will remain private. As Judge Orrick noted, "[p]ersonal medical information is understood to be among the most sensitive information that could be collected about a person." *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023). Yet Plaintiffs-Appellants Rand, Gottschau, Soto, Lash, and Mees ("Plaintiffs") allege that Defendant-Appellee Eyemart Express, LLC ("Eyemart" or "Defendant") knowingly compromised that privacy by embedding Meta Platform Inc's (Meta's) tracking Pixel (the "Pixel") on its healthcare-facing website and surreptitiously transmitting sensitive health-related information, including prescription eyewear information, to Meta without users' consent.

Eyemart presents itself as a HIPAA-covered entity, offering prescription eyewear and access to eyecare professionals through its website and explicitly promising to safeguard users' health information under HIPAA. But instead of honoring those commitments, Eyemart enabled the unauthorized disclosure of HIPAA-protected data — conduct that implicates legal obligations beyond those of a typical retail transaction and implicates unlawful wiretapping and violation of users' privacy.

This appeal arises from two legal errors that led the district court to dismiss Plaintiffs' claims. First, the district court resolved the wiretap claims on the basis of one-party consent without addressing whether that exception applies in the context of an alleged third-party interception. Second, it applied an unduly rigid pleading standard at the motion-to-dismiss stage and wrongly concluded that the crime–tort exception under the Federal Wiretap Act, 18 U.S.C. § 2511(2)(d) was inapplicable, based on a flawed finding that no protected health information ("PHI") had been disclosed, despite well-pleaded allegations to the contrary. The district court's finding that no PHI was disclosed to Meta in violation of HIPAA effectively eliminated the foundation of all Plaintiffs' claims and precluded any opportunity to amend.

Accordingly, Plaintiffs respectfully request that the judgment be reversed and that all claims be reinstated.

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d) because there were more than 100 Class Members; the aggregate amount in controversy exceeded $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class Member was a citizen of a state different from that of Defendant.

This Court has jurisdiction over the appeal under 28 U.S.C. § 1291 because this is an appeal from the district court's final judgment dismissing Plaintiffs' lawsuit and the accompanying memorandum and order granting Defendant's motion to dismiss the same. ROA.384–95, 396.

This appeal is timely. The district court entered its Order Granting Motion to Dismiss and its Final Judgment on May 27, 2025. *Id.* Plaintiffs filed their Notice of Appeal on June 26, 2025. ROA.397–400.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the district court misapplied 18 U.S.C. § 2511(2)(d) by stepping past the threshold questions of party status and consent before addressing the crime–tort exception.

2.      If Defendant is not entitled to the "party exception," whether the district court erred by failing to analyze whether either Defendant or Plaintiffs consented to Meta's interception of Plaintiffs' protected health information ("PHI").

3.      Whether the district court erred in holding that Plaintiffs Rand, Gottschau, and Soto did not submit PHI to Defendant.

4.      Whether the district court erred at the pleading stage in concluding that no PHI was disclosed to Meta, notwithstanding Plaintiffs' well-pleaded allegations.

5.      Whether the district court abused its discretion in denying Plaintiffs, particularly Lash and Mees, leave to amend their first amended complaint.

## STATEMENT OF THE CASE

Plaintiffs allege that Eyemart violated federal and state wiretapping statutes, as well as common law claims for invasion of privacy and breach of contract, arising from Eyemart's use of the Pixel on its website. The Pixel intercepted Plaintiffs' interactions with Defendant's website—interactions involving sensitive health information—and disclosed that information to Meta. The district court erred in dismissing all claims, primarily resting on the incorrect finding that Plaintiffs' PHI was never disclosed to Meta.

## I.     Factual Background

### *Eyemart*'s Website & Meta's Pixel

Eyemart owns and operates the www.eyemartexpress.com website ("Website"). ROA.248 ¶1. In conjunction with its Website activities, Eyemart operates a chain of physical stores in the United States that perform eye examinations and sell prescription and non-prescription glasses, contact lenses, and sunglasses, backed by "skilled eye doctors to ensure there is always a professional in your area." ROA.255 ¶ 31.[1]

On the Website, users can browse for health-related eye products, purchase prescription eyewear, and schedule eye examinations. ROA.248–49 ¶¶ 1, 3. To

---

[1] *Eye Exam Basics*, EYEMART EXPRESS, https://www.eyemartexpress.com/lander/eye-exam-basics (last visited October 9, 2025).

schedule eye exams with eye specialists, users: (1) enter their city, zip, or state to find the nearest location; (2) select a location or provider; and (3) utilize the location's online scheduling form to submit a request. ROA.249 ¶ 3. To search for and purchase prescription eyewear, customers can use the Website's search function (the "Search Bar") to isolate and view specific products, and then add the selected products to their cart for purchasing. ROA.249 ¶ 2.

Eyemart procured analytics software and services from Meta — primarily its Pixel. The Pixel is designed to intercept and transmit information about users' activity on the Website back to Meta. ROA.249 ¶¶ 4–6, 295 ¶ 226. The intercepted data included disclosures of when Plaintiffs purchased prescription lenses, searched for prescription products, or scheduled eye exams through the Website. ROA.262–66 ¶¶ 64–75. Meta then processed this data into marketing profiles, which it shared with Eyemart to enhance Eyemart's advertising and targeted marketing efforts directed at users, including Plaintiffs. ROA.250 ¶ 9, 267–68 ¶¶ 86–91, 288 ¶ 180.

The interception and use of Plaintiffs' communications with Eyemart was intentional and knowing as indicated by: (a) Eyemart's choice to use the Pixel on its Website; (b) Eyemart's knowledge that utilizing the Pixel on the Website would allow Meta to link user activity and user identities, allowing Meta to create targetable audiences; and (c) Eyemart's failure to design the Website to prevent sensitive health information from being transmitted to Meta using the Pixel. ROA.295 ¶ 227.

Meta's Business Tools Terms ("Business Terms"), which govern the use of the Pixel by website owners such as Eyemart, acknowledge that the Pixel "will intercept, collect, and transmit" user data. ROA.288 ¶¶ 181–84. At the same time, the Business Terms explicitly prohibit a website from sharing data with Meta that includes health or other sensitive information. ROA. 289 ¶ 187.

Eyemart's Website did not notify Plaintiffs through its terms of use or privacy policy that their interactions pertaining to their health and eyecare would be intercepted by the Pixel and disclosed to Meta, nor did Eyemart obtain Plaintiffs' consent to its disclosure practices. ROA.249–50 ¶¶ 7-8.

*Plaintiffs' Interactions With the Website and Claims*

Plaintiffs Lash and Mees ("Prescription Plaintiffs") provided their prescription information to Eyemart as part of the process for ordering prescription eyewear. ROA.254–55 ¶¶ 29–30. The district court, in its Memorandum Opinion and Order granting Defendant's Motion to Dismiss (ROA.384–95) acknowledged that Prescription Plaintiffs' prescription information constitutes PHI that was shared with Eyemart. *See* ROA.390.

Plaintiffs Rand, Gottschau, and Soto ("Search Plaintiffs") used the site to search for prescription eyewear products. ROA.253–54 ¶¶ 26-28. Plaintiff Rand used the Website to schedule an appointment for an eye examination. ROA.253 ¶ 26.

All Plaintiffs are Facebook users and allege their Facebook profiles, via their Facebook ID ("FID"), were disclosed to Meta along with their PHI. ROA.253–55 ¶¶ 26-30.

Plaintiffs brought the following claims against Defendant: (1) the Federal Wiretap Act 18 U.S.C. § 2511(1) ("Wiretap Act"); (2) the Missouri Wiretap Act, R.S. Mo. § 542.400, *et seq*; (together with the Federal Wire Tap Act, "Wiretap Claims" or "Wiretap Statutes"; (3) the Illinois Eavesdropping Statute ("IES"), 720 ILCS § 5/14-1, *et seq*; (4) an intrusion upon seclusion; (5) breach of implied contract; and (6) breach of contract.

### *The Exceptions to the Wiretap Statutes*

18 U.S.C. § 2511(2)(d) of the Wiretap Act states:

> It shall not be unlawful under this chapter for a person not acting under color of law to a wire, oral, or is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State

The Missouri Wiretap Statute is modeled on the Wiretap Act and, similarly, is a one-party consent statute with a crime–tort exception. MO. REV. STAT. § 542.402.2(3); *see also* ROA.243.

*HIPAA*

HIPAA prohibits the knowing and wrongful disclosure of "individually identifiable health information" to a third party. 42 U.S.C. § 1320d-6. This violation is enhanced where "the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage[ or] personal gain . . . ." § 1320d-6(b)(3).

"Individually identifiable health information" ("IIHI") is defined by HIPAA as "a subset of health information, including demographic information collected from an individual, and[] is created or received by a health care provider . . . " that "[r]elates to the past, present, or future physical or mental health or condition of an individual[or] the provision of health care to an individual . . ." and that can "identify the individual" or otherwise provides "a reasonable basis to believe the information can be used to identify the individual." ROA.266 ¶ 79.

Eyemart declares itself as a covered entity pursuant to HIPAA. ROA.266 ¶ 76. Eyemart's HIPAA Privacy Policy notes that "[a]ny health information we collect from you on this site will be handled in accordance with the terms of our HIPAA Privacy Statement" because it is "required by applicable law to maintain the privacy of your health information." ROA.266 ¶ 77.

The *sample* Pixel Pageview data put forth in the Complaint (*Figure 12* at ROA.275, *Figure 13* at ROA.276) (collectively, "Figures" or "Exemplar Screenshots") was obtained by investigators using the Website. Without a valid prescription and making an actual purchase, Plaintiffs' counsel were unable to conclusively determine all webpages and data monitored and disclosed by the Pixel during the relevant time period when sensitive health information was entered into the Website. Accordingly, the Figures provided by Plaintiffs represented intercepted data observable through the purchase process before checkout was completed. *See* ROA.272 ¶ 112, 274 ¶ 114, 277 ¶ 127.

Plaintiffs included the Figures to illustrate the Pixel's operation, put Eyemart on notice, and sample the data at issue; not to catalogue every, or any Plaintiff-specific, transmission.

## II. Procedural History

Plaintiffs filed this putative class action in the Northern District of Texas on March 13, 2024. ROA.9. Eyemart moved to dismiss under Rules 12(b)(1) and 12(b)(6) on May 6, 2024. ROA.91. On October 1, 2024, Chief Judge David C. Godbey granted the motion in part, rejecting Eyemart's standing challenge but

dismissing the operative claims with leave to amend. ROA.237.[2] Plaintiffs filed their amended complaint (Complaint), adding plaintiffs Lash and Mees (Prescription Plaintiffs) on October 31, 2024. ROA.248. Eyemart again moved to dismiss on January 6, 2025, ROA.317, Plaintiffs responded on February 17, 2025, ROA.347, and Eyemart replied on March 17, 2025. ROA.372. On May 27, 2025, the District Court granted the motion and dismissed all claims with prejudice, ROA.384 ("Order"), entering final judgment the same day. ROA.396. Plaintiffs noticed their appeal on June 26, 2025, ROA.397, and the Fifth Circuit docketed the appeal as No. 25-10784 on July 11, 2025.

### III.     The District Court's Order Granting Eyemart's Motion to Dismiss

The district court determined that all of Plaintiffs' claims were contingent on their allegations that Eyemart disclosed Plaintiffs' PHI to Meta in violation of HIPAA. ROA.388. Upon finding that Eyemart qualified for the party exception under § 2511(d) (ROA.393), the Court held that Plaintiffs could only pursue their Wiretap Act claims under the crime–tort exception, which, in turn, depended on whether Eyemart's alleged disclosure of PHI to Meta violated HIPAA.

On this precise issue, the district court first examined whether Search Plaintiffs disclosed PHI to Eyemart via their interactions with the Website. In its

---

[2] The district court held that Plaintiffs alleged cognizable injury and fact through the alleged disclosure of their private health information, and that under HIPAA, the disclosure of individually identifiable health information without permission constitutes a cognizable harm. ROA.242.

analysis, the district court relied heavily on *Am. Hosp. Ass'n v. Becerra*, No. 4:23-cv-01110-P, 2024 WL 3075865 at *12 (N.D. Tex. 2024) ("*Becerra*"), to support its conclusion that HIPAA does not impose liability on entities to guard against disclosing visitors' subjective motives in visiting a webpage.[3] ROA.389. It then concluded that the Search Plaintiffs' interactions did not constitute the sharing of PHI. *Id.*

Next, the district court assessed whether Prescription Plaintiffs adequately alleged that their PHI, in the form of prescription information, was disclosed to Meta. ROA.389–92. Accepting as true that prescription lens information qualifies as PHI, the district court acknowledged that Plaintiffs alleged they shared PHI with Eyemart. ROA.390. However, the district court found no basis for concluding that this PHI was subsequently disclosed to Meta. ROA.391–392. In reaching this conclusion, the district court specifically referenced the Figures, noting that *Figure 13* did not show any disclosure of prescription information to Meta, nor did it indicate that the lenses were prescription lenses. *Id.* The district court further found that Plaintiffs did not sufficiently allege that the "AddToCart" event, which is triggered when items are added to a cart, varied based on whether prescription or non-prescription lenses were selected. ROA.391.

---

[3] The district court examined and relied on *Becerra* in its first order as to Defendant's motion to dismiss when evaluating whether the Search Plaintiffs disclosed PHI to Eyemart through their interactions with the website. *See* ROA.244.

By concluding that no PHI was disclosed to Meta, the district court dismissed all of Plaintiffs' claims in the threshold stage, without addressing any other elements of their claims, on the erroneous basis that this single issue was dispositive.

## SUMMARY OF THE ARGUMENT

The district court erred in two respects. First, it bypassed threshold questions under the Wiretap Claims — failing to analyze whether Eyemart itself intercepted Plaintiffs' communications, either as a party or through authorized conduct. Instead, the district court proceeded directly to the crime–tort exception and then erroneously concluded that Eyemart did not violate HIPAA.

Second, in assessing HIPAA violations, the district court erroneously concluded that (1) Search Plaintiffs did not submit PHI, and (2) although Prescription Plaintiffs did, Eyemart did not disclose said PHI to Meta. These conclusions were based on an inapposite authority and an improperly stringent pleading standard inappropriate at the Rule 12 stage.

Search Plaintiffs *did* plausibly allege that their healthcare-related website interactions, linked to their Facebook IDs, constitute PHI under HIPAA — a view supported by analogous Pixel cases. The district court's reliance on *Becerra* was misplaced, as that case involved non-identifying device data, unlike the personally identifiable disclosures at issue here.

As to the Prescription Plaintiffs, the district court erred by relying solely on a single illustrative Exemplar Screenshot as dispositive evidence that no PHI was disclosed to Meta. It then disregarded the totality of Prescription Plaintiffs' broader allegations that their PHI was, in fact, disclosed to Meta. Those allegations must be accepted as true at the pleading stage, particularly because the full scope of Pixel transmissions cannot be determined without the benefit of discovery.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant of a Rule 12(b)(6) motion to dismiss, viewing all facts in the light most favorable to the plaintiff. *Taylor v. Root Insurance Company*, 109 F.4th 806, 808 (C.A.5 (Tex.), 2024). To survive the motion, "a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ferrer & Poirot, GP v. Cincinnati Ins.*, 36 F.4th 656, 658 (5th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

## ARGUMENT

**I.     The District Court Improperly Applied the Wiretapping Claims' Statutory Framework Pertaining to the Exceptions Under 18 U.S.C. § 2511(2)(d).**

The district court erred by addressing the crime–tort exception without first determining whether the party or consent exceptions under § 2511(2)(d) applied at

the outset.[4] Such sequencing matters: the crime–tort exception is only relevant if one of those exceptions applies to Eyemart in the first instance. Because Eyemart does not qualify for the party exception under Plaintiffs' pleaded theory of interception, the district court was required to analyze whether Eyemart had provided evidence that either (a) Eyemart consented to Meta's interception or (b) Plaintiffs consented to Meta's interception. The district court failed to analyze both.

### A. The District Court Incorrectly Assumed Eyemart was Entitled to the Party Exception.

18 U.S.C. § 2511(2)(d) provides two exceptions to Wiretap Act liability: the "party exception" (where the interceptor itself is a party to the communication) and the "consent exception" (where one party consents). But critically, the text limits both exceptions to the direct interceptor. Plaintiffs allege that Eyemart violated § 2511(1) by "*using* Meta and its Pixel to intercept Plaintiffs' communications with Eyemart", ROA.295 ¶ 226 (emphasis added), or, similarly, violated the Missouri Wiretap Act by "*proc[uring]* Meta to 'intercept'", ROA.299 ¶ 247 (emphasis added), Plaintiffs communications on the Website. As pled, Meta is the interceptor while Eyemart is merely the user or procurer of Meta's interception. *See* ROA.249 ¶ 7, 251 ¶ 20, 279 ¶ 135, 302 ¶ 266; *see also Mekhail v. N. Mem'l Health Care*, 726

---

[4] In a single sentence, the district court concluded the party exception applied to Eyemart. *See* ROA.393 ("Eyemart cannot eavesdrop on communications directed at it 'unless such communication is intercepted for the purpose of committing any criminal or tortious act'").

F. Supp. 3d 916, 925 (D. Minn. 2024) ("an interceptor and the procurer/user of an interception are conceptually and legally distinct").

The statutory text confirms this reading. § 2511(2)(d) begins: "It shall not be unlawful . . . for a person . . . to *intercept* a wire . . . communication where such person is a party to the communication." (emphasis added); *see also Mekhail,* 726 F. Supp. 3d at 926 ("the statute's plain language appears to support the interpretation that the party exception was drafted with active interceptors foremost in mind"). If Eyemart were the interceptor, it might qualify for protection under § 2511(2)(d). However, as pled, it is a procurer, which is not protected under § 2511(2)(d).

In *Mekhail*, the court recognized that "no circuit, nor any court, appears to have addressed a similar fact pattern in the context of the party exception"— namely, whether § 2511(2)(d) excludes parties who merely procure or use others' interceptions from invoking the party exception. 726 F. Supp. 3d at 927. Similarly, in *Q.J.*, *v. Powerschool Holdings, LLC,* No. 23 C 5689, 2025 WL 2410472, at *11, n.3 (N.D. Ill. Aug. 20, 2025), the court noted that § 2511(2)(d)'s statutory language "is at least fuzzy as to whether the party exception applies when the defendant is sued under a procurer theory, rather than as the party who intercepted the communications in question." Yet in each instance, both courts declined to engage that question directly, because they found that the crime–tort exception applied. *Id.* In other words, whether the defendants could qualify for the party exception was

immaterial to the outcome given that they were liable under the crime–tort exception.

Here, by contrast, the district court neither analyzed whether Eyemart could qualify for the party exception as a non-interceptor nor held that the crime–tort exception applied. This dual omission deprived Plaintiffs the required statutory analysis that was warranted[5] — particularly given that Plaintiffs pleaded their claims in a manner that squarely presented the issue.[6] Because the crime–tort exception was not found to apply, the district court should then have evaluated whether Eyemart, as a procurer rather than a direct interceptor, fell outside the statutory party exception.

---

[5] Plaintiffs are entitled to understand the consideration of the basis on which the trial court acted. *In re Volkswagen of Am., Inc*., 545 F.3d 304, 310 n.4 (5th Cir. 2008) (quoting *Gurmankin v. Costanzo,* 626 F.2d 1115, 1119–20 (3d Cir.1980) ("Meaningful appellate review of the exercise of discretion requires consideration of the basis on which the trial court acted. If the factors considered do not accord with those required by the policy underlying the substantive right or if the weight given to those factors is not consistent with that necessary to effectuate that policy, then the reviewing tribunal has an obligation to require the exercise of discretion in accordance with 'what is right and equitable under the circumstances and the law.'" (quoting *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520 (1931))

[6] In *Sweat v. Houston Methodist Hosp.*, No. CV H-24-775, 2024 WL 3070184, at *4 (S.D. Tex. June 20, 2024), a factually similarly case in this Circuit alleging wiretap claims via the Pixel, the court held that the defendant-hospital-website qualified for the party exception. However, the *Sweat* plaintiffs' allegations differed from those of Plaintiffs here. *See Sweat v. Houston Methodist Hosp.,* No. CV H-24-775 (S.D. Tex.), First Amended Complaint, Dkt. No. 6, at ¶ 163 ("Defendant . . . *intercepted*, and endeavored to intercept Plaintiffs' and Class members' electronic communications") (emphasis added), ¶ 168 ("*Defendant . . . intercepted* and used the contents of Plaintiffs' and Class members' electronic communications") (emphasis added), ¶ 170 ("Defendant . . . *intercepted* the contents of Plaintiffs' and Class Members' electronic communications") (emphasis added).

16

*1.      Because The Party Exception Does Not Apply, the District Court Was Required to Decide Consent*

Because Eyemart cannot claim the party exception, the district court was obligated to address whether either Eyemart or Plaintiffs gave "prior consent" under § 2511(2)(d). It made no such analysis.

The burden to prove consent lies with the party asserting it as a defense. *Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 862 (C.D. Cal. 2024) (quoting *In re Pharmatrak, Inc.*, 329 F.3d 9, 19 (1st Cir. 2003) ("We think, at least for the consent exception under the [Wiretap Act] in civil cases, that it makes more sense to place the burden of showing consent on the party seeking the benefit of the exception, and so hold.")). Consent may be express or implied, but it must be actual—meaning that "the circumstances, considered as a whole, demonstrate that a reasonable person understood" and knowingly authorized the interception. *Calhoun v. Google, LLC,* 113 F.4th 1141, 1147 (9th Cir. 2024*); see also United States v. Ortiz-Lopez*, 651 F. Supp. 3d 855, 868 (W.D. Tex. 2023) ("Without actual notice, consent can only be implied when the surrounding circumstances convincingly show that the party knew about and consented to the interception." (quoting *Berry v. Funk*, 146 F.3d 1003, 1011 (D.C. Cir. 1998). To establish consent, disclosures must "explicitly notify" users of the interception at issue. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021).

Here, there was no notice or consent. Plaintiffs did not consent to Meta's interception, and Eyemart could not have consented on its own behalf. To the contrary, Meta's own Business Terms prohibit the sharing of "health or other categories of sensitive information" via the Pixel—a category broader than HIPAA's statutorily defined PHI or IIHI—which encompasses data like Plaintiffs' communications about prescription lenses and eye appointments. *See* Meta's Business Terms; *see also Lynch v. Express Scripts Holding Company*, No. 23-CV-01170-AMO, 2025 WL 2224419, at *9 (N.D. Cal. Aug. 5, 2025) (holding that, based on Meta's policies, plaintiff could plausibly allege that he was "not disclos[ed] that [the defendant] would engage" in the sharing of his sensitive health information); *see also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 800 (N.D. Cal. 2022) (similar).

The district court's decision departed from the statutory analysis or sequence. It bypassed the predicate questions of party status and consent, which, under the statute's plain language, come before the crime–tort inquiry. And even if it had considered consent, the undisputed facts and governing law compel the conclusion that Eyemart failed to adequately establish that it or Plaintiffs provided valid consent.

## II.    The District Court Erred in Holding Eyemart Did Not Disclose PHI to Meta.

The district court held that, because Plaintiffs had not plausibly alleged PHI was shared with Meta, "each of the claims fails." ROA.393. That conclusion, however, ignored and misconstrued Plaintiffs' well-pleaded allegations. *See Sanchez Oil & Gas Corporation v. Crescent Drilling & Production, Inc.*, 7 F.4th 301, 309 (5th Cir. 2021) (holding Rule 8 of Federal Procedure requires a short and plain statement of the claim showing that the pleader is entitled to relief). "So long as a pleading alleges facts upon which relief can be granted, it states a claim even if it 'fails to categorize correctly the legal theory giving rise to the claim.'" *Id.*

Accordingly, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). On a motion to dismiss, Plaintiffs' allegations must be accepted as true and all reasonable inferences drawn in their favor. *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004); *see also Nguyen v. Bank of Am., NA*, No. CIV.A. G-11-290, 2012 WL 33203, at *2 (S.D. Tex. Jan. 6, 2012) ("when considering a 12(b)(6) motion to dismiss, the court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her claims, not whether the plaintiff will eventually prevail) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

### A. Prescription Plaintiffs Sufficiently Plead Eyemart Disclosed PHI to Meta.

The district court acknowledged that the Prescription Plaintiffs plausibly alleged they shared PHI with Eyemart by entering prescription information on Eyemart's website when purchasing eyeglasses. ROA.390. Such acknowledgment—when combined with the Prescription Plaintiffs' allegations that this PHI was subsequently disclosed to Meta via the Pixel—should have been sufficient to survive a motion to dismiss, as the precise scope of the Pixel data disclosed to Meta is a question of fact that cannot be resolved on a motion to dismiss. *See Cina v. Cemex, Inc.*, No. 4:23-CV-00117, 2025 WL 2294331, at *4 (S.D. Tex. Aug. 8, 2025) ("factual disputes are better resolved as the case moves forward with the benefit of discovery."); *see also Lexos Media IP, LLC v. Overstock.com, Inc.*, No. 22-CV-2324-JAR-ADM, 2023 WL 3119600, at *3 (D. Kan. Apr. 27, 2023) ("it is plausible that [plaintiff] could demonstrate at trial that the technology reflected in these screenshots continued during the relevant time frame").

Courts addressing PHI-Pixel allegations have consistently rejected the argument that plaintiffs must plead a disclosure of PHI with a high degree of specificity or provide examples illustrating exactly what data was disclosed to a third-party. *See Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501-AMO, 2025 WL 2052302, at *7 (N.D. Cal. July 22, 2025) (holding that requiring plaintiffs to

establish where on the web property source code exists and what features of source code are being enabled on those pages to send allegedly protected health information "imposes a standard far beyond what Plaintiffs must satisfy at the pleading stage"); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1259 (N.D. Cal. 2024) (holding plaintiffs need only allege the type of sensitive information TikTok allegedly received through its pixel ); *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 818–19 (N.D. Cal. 2023) (holding that at the motion to dismiss stage, it is not necessary for plaintiffs to plead facts showing what specific medical information or which of that alleged medical information actually was transmitted to Meta and in what form); *D'Angelo v. Penny Opco, LLC*, No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054, at *20 (S.D. Cal. Oct. 24, 2023) (To expect a complete accounting of the Pixel from Plaintiffs' allegations requires "a pleading standard" that would require a plaintiff "to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the . . . defendant and its third-party recorder.").[7]

Here, the absence of prescription data in one illustrative Exemplar Screenshot does not negate the totality of Prescription Plaintiffs' well-pleaded allegations that the Pixel disclosed their PHI. The Figures included in the Complaint were offered to

---

[7] Neither of the complaints in *GoodRx Holdings, Inc., FullStory, Inc.,* or *Regents of Univ. of California* included any example of pixel data or general illustration explaining how the Pixel transmits data.

demonstrate, in general terms, how the Pixel functioned and to substantiate Plaintiffs' allegations. However, the district court misinterpreted the Figures and treated them as dispositive proof that no prescription data was transmitted. That conclusion was erroneous because: (1) the Figures do not depict Prescription Plaintiffs' actual purchase; (2) counsel could not replicate Prescription Plaintiffs' precise transactions without inputting actual prescription data on the day such communications were transmitted; (3) there is no evidence, at this stage of the proceedings, to the contrary disclaiming Prescription Plaintiffs' allegations; and (4) the Figures, as merely "evidence of an element of Plaintiff[s'] claims[s]." should not have been considered part of the pleadings when considering a motion to dismiss, as only documents that are "necessary" to establish an element of a claim are considered by a court on a motion to dismiss. *See Garrett v. Kohls Distrib. Efulfillment Ctr.,* No. 3:23-cv-2525-B-BN, 2024 WL 3237184, at *5–6 (N.D.Tex. June 7, 2024) ("if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint."); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 994 (9th Cir. 2018) ("it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.").

Furthermore, the district court's finding that "nowhere in this factual pleading do Plaintiffs allege that prescription information is included in the information

tracked", ROA.392, and that "Plaintiffs here fail to plead that their actions would have resulted in the transmission of their PHI to Meta because they fail to plead that the prescription information is captured by the Pixel", *id.*, overlooks the Prescription Plaintiffs' allegations that their PHI was "shared with Facebook." ROA.254–55 ¶¶ 29–30. Such allegations can reasonably be interpreted as asserting that prescription information was among the data tracked by Eyemart and subsequently disclosed to Meta.

Accepting Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the district court should have found that the Prescription Plaintiffs plausibly alleged that Eyemart disclosed their PHI to Meta. Because only Meta and Eyemart possess the complete information about what PHI the Pixel transmitted through the Website, Plaintiffs were entitled to discovery. *See Jancik v. WebMD LLC*, No. 1:22-CV-644-TWT, 2025 WL 560705, at *8 (N.D. Ga. Feb. 20, 2025) (granting class certification where plaintiffs substantiated allegations through third-party discovery). Plaintiffs' well-pleaded allegations warranted that opportunity.

### B. Search Plaintiffs Sufficiently Plead They Communicated PHI to Eyemart, Which Was Then Disclosed to Meta.

Even if Search Plaintiffs did not input their prescription information into the Website, their interactions with the Website—using it to book an eye exam (Plaintiff

23

Rand) and to search for prescription products (all Search Plaintiffs)—still constitute the disclosure of PHI to Eyemart, which Eyemart then transmitted to Meta.

HIPAA prohibits any entity from "knowingly . . . disclos[ing] individually identifiable health information to another." 42 U.S.C. § 1320d-6(a)(3). Such information qualifies as individually identifiable health information ("IIHI") when it (1) relates to an individual's healthcare and (2) identifies the individual or provides a reasonable basis to believe it could be used to do so. *Becerra* at 788.

Courts have repeatedly recognized that interactions with a healthcare provider's website—whether to research providers, filter directories, or book appointments—fall squarely within this definition. *See, e.g., Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. Nov. 17, 2023) (filtering physician directory by specialty plausibly constitutes PHI); *see also R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 885 (C.D. Cal. 2024) (searching for and adding healthcare products to online cart related to certain health conditions constituted PHI disclosure); *Smith v. Loyola Univ. Med. Ctr.*, No. 23-CV-15828, 2024 WL 3338941, at *6 (N.D. Ill. July 9, 2024) (disclosure of medical appointment and treatment location information constitutes PHI); *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24-C-1404, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) (same).

Plaintiffs' interactions here are no different. Plaintiff Rand's use of the Website to schedule an eye examination is quintessential PHI disclosure, and Search

Plaintiffs' specific searches for prescription eyewear products likewise "relate to" healthcare. The district court itself came close to acknowledging this principle when it cited *Cousin* in ruling on Eyemart's first motion to dismiss, but it erroneously distinguished that case on the ground that the Search Plaintiffs there "took steps to search for a particular type of doctor," whereas Plaintiff Rand used a function that returned results for "doctors of a single specialty." ROA.245. That distinction is immaterial. Whether a user manually selects a specialty or the website only offers providers within a single specialty, the interaction still reveals the user is seeking healthcare relating to a specific condition, and—when linked to a personal identifier—constitutes IIHI under HIPAA. Indeed, Eyemart's Website functions as a "filter" by design, since Eyemart exclusively offers eye-related care and prescription products. Using it to search for eyecare services or prescription products is thus analogous to the specialty-based filtering at issue in *Cousin*.

Additionally, the district court erred in relying on *Becerra* to conclude that Plaintiffs' subjective intent in visiting the Website could not constitute a disclosure of PHI, thereby improperly undermining the significance of Search Plaintiffs' interactions with the Website. Unlike the generalized web traffic and mere IP address at issue in *Becerra*, Search Plaintiffs here allege that specific, uniquely personally identifying data—the FID—linked to an individual's actual healthcare-related interactions, such as purchasing prescription products or scheduling medical

exams, was transmitted to Meta. Indeed, other courts have expressly rejected *Becerra*'s reasoning in similar contexts. *See R.C.,* 733 F. Supp. 3d at 889-90 (differentiating the ability of IP addresses and FIDs to identify users and noting that attempts to acquire or purchase medical goods and services "give rise to an obvious inference about the purchaser's health conditions" because "an internet user is very unlikely to purchase [medical goods] for reasons unrelated to the user's own health conditions"); *see also Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, 2025 WL 692097, at *5 (W.D. Wash. Mar. 4, 2025) (distinguishing an FID from the IP address, which only identifies a specific device, as analyzed by the court in *Becerra*).

In short, both the facts and the law support that Search Plaintiffs adequately alleged the disclosure of PHI in violation of HIPAA. By misreading *Cousin* and overextending *Becerra*, the district court misapplied HIPAA's definition of IIHI and the protections it affords.

### C. Prescription and Search Plaintiffs Should Have Been Granted Leave to Amend.

Regardless of whether the district court concluded that the Search Plaintiffs did not disclose PHI to Eyemart, or that Eyemart did not disclose the Prescription Plaintiffs' PHI to Meta, all Plaintiffs should have been granted leave to amend.

Leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Unless there is a substantial reason to deny amendment, the district court's discretion is not broad enough to justify refusal. *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).

The district court erred in denying Plaintiffs leave to amend—particularly with respect to the Prescription Plaintiffs—who were newly added in the operative Complaint and had not previously been given an opportunity to amend. They can provide additional factual allegations sufficient to survive a motion to dismiss, even without relying on the illustrative Figures included in the Complaint. *See Hernandez v. Ikon Office Solutions, Inc.*, 306 F. App'x 180, 182 (5th Cir. 2009) ("At the motion to dismiss stage of the proceedings, with a claim conceded to be viable, [plaintiff] should have been given at least one chance to amend.").

## III.    Finding Eyemart Disclosed Plaintiffs' PHI to Meta Revives All Claims.

In reversing the district court's conclusion that no PHI was disclosed to Meta, Appellants claims must be reinstated.

*First*, Plaintiffs' Wiretap Claims survive under the crime–tort exception because Eyemart's conduct constitutes a violation of HIPAA. *Sweat v. Houston Methodist Hospital*, C. A. No. H-24-775, 2025 WL 2697111, at *8 (S.D. Tex., 2025)

(recognizing that a violation of HIPPA may establish application of the crime–tort exception[8]); *Mekhail,* 726 F. Supp. 3d at 916 (denying dismissal where defendant transmitted plaintiffs' PHI and PII to third parties through use of the Meta Pixel in violation of HIPAA); *Lugo v. Inova Health Care Servs.*, No. 1:24-CV-700 (PTG/WEF), 2025 WL 905191, at *8 (E.D. Va. Mar. 25, 2025) (holding that a plaintiff alleging a statutory violation, even for financial or commercial purposes, sufficiently states a claim under the Wiretap Act's crime–tort exception). Because Missouri's statute mirrors the ECPA and likewise incorporates a crime–tort exception, Plaintiffs' Missouri Wiretap Act claim is equally viable. *See* ROA 393.

*Second*, once PHI disclosure is properly recognized, Plaintiffs' additional causes of action—including invasion of electronic communications, breach of contract, and intrusion upon seclusion—also withstand dismissal. *See* ROA.394 ("The [district court] has already found that Soto did not plausibly plead facts to show he shared any PHI with Eyemart. Therefore, he has failed to establish that he had any private conversation that could have been intercepted."); *see also id*. ("Plaintiffs' breach of contract claims and intrusion upon seclusion claims are premised upon the disclosure of plaintiffs' PHI."). The district court's prior

---

[8] This summary judgment decision ultimately turned on evidence that Plaintiffs did "not met their burden of showing that [defendant] had a contemporaneous intent to commit a crime or a tort." *Sweat,* 2025 WL 2697111, at *8.

dismissal of these claims rested entirely on its erroneous finding that no PHI was disclosed. Correcting that error revives these claims in full.

## CONCLUSION

For the foregoing reasons, this Court should vacate the district court's order dismissing Appellants' Complaint and remand for further proceedings.

Date: October 9, 2025

**FOSTER YARBOROUGH PLLC**

By: /s/ *Patrick Yarborough*
Patrick Yarborough
Jeffrey Lucas Ott
440 Louisiana, Suite 1800
Houston, Texas 77002
Telephone: (713) 331-5254
Facsimile: (713) 513-5202
Email: patrick@fosteryarborough.com
Email: luke@fosteryarborough.com

**LEVI & KORSINSKY, LLP**

Mark S. Reich
Gary S. Ishimoto
33 Whitehall Street, 27th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: gishimoto@zlk.com

*Counsel for Plaintiff–Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

Date: October 9, 2025
　　　　　　　　　　　　　*/s/ Patrick Yarborough*　　　　
　　　　　　　　　　　　　Patrick Yarborough

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,482 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and by Circuit Rule 32.1

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32.1 and with the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

Date: October 9, 2025                                    */s/ Patrick Yarborough*
                                                        Patrick Yarborough