No. 25-10784

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

RACHELLE RAND, ESPERANZA GOTTSCHAU, RAMON SOTO,
GEORGIANNA LASH, and AARON MEES,
*Plaintiffs–Appellants*,

v.

EYEMART EXPRESS LLC,
*Defendant–Appellee.*

On Appeal from the United States District Court
for the Northern District of Texas
No. 3:24-cv-00621-N
Hon. David C. Godbey

## APPELLANTS' REPLY BRIEF

Patrick Yarborough
Jeffrey Lucas Ott
**FOSTER YARBOROUGH
KILLINGSWORTH PLLC**
440 Louisiana, Suite 1800
Houston, TX 77002
Telephone: (713) 331-5254
Facsimile: (713) 513-5202
Email: patrick@fosteryarborough.com
Email: luke@fosteryarborough.com

[Additional Counsel on Signature Page]

*Attorneys for Plaintiffs-Appellants*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or refusal.

All persons with a financial interest in the outcome of this litigation are as follows:

*Plaintiffs–Appellants*

    Rachelle Rand
    Esperanza Gottschau
    Ramon Soto
    Georgianna Lash
    Aaron Mees

*Defendant–Appellee*

    Eyemart Express, LLC

*Counsel for Plaintiffs-Appellants*

| | |
|---|---|
| Patrick Yarborough | Mark S. Reich |
| Jeffrey Lucas Ott | Gary S. Ishimoto |
| **FOSTER YARBOROUGH** | **LEVI & KORSINSKY, LLP** |
| **KILLINGSWORTH PLLC** | 33 Whitehall Street, 27th Floor |
| 440 Louisiana, Suite 1800 | New York, NY 10004 |
| Houston, TX 77002 | Telephone: (212) 363-7500 |
| Telephone: (713) 331-5254 | Facsimile: (212) 363-7171 |
| Facsimile: (713) 513-5202 | |

***Counsel for Defendant-Appellee***

Starr T. Drum
Xeris E. Gregory
**POLSINELLI PC**
2000 Southbridge Parkway
Suite 301
Birmingham, Alabama 35209
Telephone: (205) 936-1008
Email: sdrum@polsinelli.com
Email: xgregory@polsinelli.com

Andrew F. Newman
**POLSINELLI PC**
4020 Maple Avenue, Suite 300
Dallas, Texas 75219
Telephone: (214) 661-5506
Email: afnewman@polsinelli.com


*/s/ Patrick Yarborough*
Patrick Yarborough

Attorney of Record for Appellants

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 5th Cir. R. 28.2.3 and Fed. R. App. P. 34(a)(1), Appellants Rachelle Rand, Esperanza Gottschau, Ramon Soto, Georgianna Lash, and Aaron Mees believe the facts and legal arguments in this case are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. However, Appellants welcome the opportunity to present oral argument if the Court would find it helpful.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS.......................................................... i

STATEMENT REGARDING ORAL ARGUMENT................................................ iii

TABLE OF CONTENTS ....................................................................................... iv

TABLE OF AUTHORITIES..................................................................................v

INTRODUCTION ................................................................................................1

ARGUMENT ......................................................................................................3

   I.    The Prescription Plaintiffs Plausibly Allege That Their Prescription
        Information Was Transmitted to Facebook ....................................................3

   II.   Search Plaintiffs Adequately Alleged They Shared PHI With Eyemart .......5

   III.  Plaintiffs' Wiretap Claims Survive Dismissal................................................6

     A.  The party exception does not apply here ...................................................7

     B.  Even if the party exception does apply, the crime-tort exception applies to
         plaintiffs' wiretap claims ........................................................................8

     C.  Plaintiff Soto's claim under the Illinois Eavesdropping Statute ("IES"),
         720 ILCS § 5/14-1 survives.....................................................................9

   IV.  Plaintiffs' Breach of Contract Claims And Intrusion Upon Seclusion
        Claims Survive ..........................................................................................11

     A.  Breach of Contract Claims .......................................................................11

     B.  Intrusion upon seclusion claims...............................................................13

   V.    The District Court Should Have Granted Leave to Amend........................17

   VI.  The District Court Correctly Held That Plaintiffs Have Article III Standing
        ......................................................................................................17

CONCLUSION.................................................................................................19

CERTIFICATE OF SERVICE ..............................................................................21

CERTIFICATE OF COMPLIANCE .....................................................................22

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
    No. 24-C-1404, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024)................................6

*Am. Hosp. Ass'n v. Becerra*,
    738 F. Supp. 3d 780 (N.D. Tex. 2024)..........................................................5

*Brown v. Google LLC*,
    No. 20-CV-03664, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021)......................12

*Busse v. Motorola, Inc.*,
    351 Ill. App.3d 67 (2004) .........................................................................13

*Chatman v. Capital One Bank* (USA), N.A.,
    No. 5-23-CV-00408-JKP-RBF, 2023 WL 6056992 (W.D. Tex., 2023) ...............12

*Cousin v. Sharp Healthcare*,
    702 F. Supp. 3d 967 (S.D. Cal. Nov. 17, 2023)................................................6, 14

*Cousin v. Sharp Healthcare*,
    681 F.Supp.3d 1117 (S.D. Cal. 2023) .........................................................15

*D'Angelo v. Penny OpCo, LLC*,
    No. 23-cv-0981-BAS-DDL, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023)...........4

*Doe v. Deaconess Illinois Union Cnty. Hospital, Inc.*,
    No. 3:24-CV-02284-NJR, 2025 WL 2771415 (S.D. Ill., 2025) ...........................8

*Doe v. High-Tech Institute, Inc.*,
    972 P.2d 1060 (Colo. App., 1998) ..............................................................13

*Doe v. Lawrence Gen. Hosp.*,
    No. 25-CV-10081-NMG, 2025 WL 2808055 (D. Mass. Aug. 29, 2025)..............9

*Doe v. Regents of the University of California*,
    672 F.Supp.3d 813 (N.D. Cal. 2023)....................................................... 15, 18

*Doe v. Tenet Healthcare Corporation*,
    789 F.Supp.3d 814 (E.D. Cal. 2025) .........................................................15

*Dyer v. Northwest Airlines Corp.*,
    334 F. Supp. 2d 1196 (D.N.D. 2004) ....................................................12

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) .............................................................18

*Hannant v. Culbertson*,
    No. 4:24-cv-04164-SLD-RLH, 2025 WL 2413894 (C.D. Ill., 2025) .................10

*In re ESO Solutions, Inc. Breach Litig.*,
    No. 1:23-CV-1557-RP, 2024 WL 4456703 (W.D. Tex. 2024) ...........................18

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................11

*In re Google, Inc. Privacy Policy Litigation*,
    58 F.Supp.3d 968 (N.D. Cal. 2014) .......................................................16

*In Re Grp. Health Plan Litig.*,
    709 F. Supp. 3d 707 (D. Minn. 2023)....................................................8, 14

*In re Nickelodeon Consumer Privacy Litigation*,
    827 F.3d 262 (3d Cir. 2016)............................................................. 16, 18

*Javier v. Assur. IQ LLC*,
    649 F. Supp. 3d 891 (N.D. Cal. Jan. 5, 2023)............................................10

*Kane v. University of Rochester*,
    2024 WL 1178340 (W.D.N.Y., 2024) .......................................................6

*Lovick v. Ritemoney, Ltd.*,
    378 F.3d 433 (5th Cir. 2004)............................................................3, 13

*Lugo v. Inova Health Care Servs.*,
    No. 1:24-CV-700 (PTG/WEF), 2025 WL 905191 (E.D. Va. Mar. 25, 2025) ........8

*May v. Expedia, Inc.*,
    A-16-CV-1211-RP, 2018 WL 4343445 (W.D. Tex., 2018) .................................12

*MedARC, LLC v. Meritain Health, Inc.*,
    No. 3:20-CV-3281-N-BH, 2021 WL 11718544 (N.D. Tex., 2021).....................17

*Mekhail v. N. Mem'l Health Care*,
  726 F. Supp. 3d 916 (D. Minn. 2024)..............................................................7, 8

Nienaber v. Overlake Hospital Medical Center,
  No. 2:23-cv-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025) .................5

*Patel v. Facebook, Inc.*,
  932 F.3d 1264 (9th Cir. 2019)................................................................18

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,
  45 F.4th 816 (5th Cir. 2022) ........................................................... 18, 19

*Q.J. v. PowerSchool Holdings, LLC*,
  No. 23 C 5689, 2025 WL 2410472 (N.D. Ill. Aug. 20, 2025)...............................7

*R.C. v. Walgreen Co.*,
  733 F. Supp. 3d 876 (C.D. Cal. 2024) .........................................................6, 15

*Riganian v. LiveRamp Holdings, Inc.*,
  791 F.Supp.3d 1075 (N.D.Cal. 2025) .....................................................9

*Roberts v. CareFlite*,
  No. 02-12-00105-CV, 2012 WL 4662962 (Tex. App Oct. 4, 2012)....................13

*Rodriguez v. Google LLC*,
  No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021)....................9

*Smith v. Loyola Univ. Med. Ctr.*,
  No. 23-CV-15828, 2024 WL 3338941 (N.D. Ill. July 9, 2024) .............................6

*Stein v. Edward-Elmhurst Health*,
  No. 23-cv-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ................... 8, 9, 10

*Stevenson v. Tocé*,
  113 F.4th 494, 502–03 (5th Cir. 2024) .................................................3

*Toy v. Life Line Screening of Am. Ltd.*,
  No. 23-cv-04651-RFL, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) ..............14

*Willingham v. Global Payments, Inc.*,
  No. 1:12-CV-01157, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013).......................12

**Statutes**

IL ST CH 720 § 5/14-2(a)(2) ....................................................................10

IL ST CH 720 § 5/14-2(a)(3) ....................................................................10

IL ST CH 720 § 5/14-2(a)(3-5) .................................................................10

IL ST CH 720 § 5/14-2(a)(5) ....................................................................10

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................1, 4

## INTRODUCTION

Appellee–Defendant's ("Defendant" or "Eyemart") Response Brief ("Response") largely repackages the district court's fundamental errors—most notably, the district court's imposition of a pleading standard far beyond what Rule 12(b)(6) requires. Defendant ignores the substantial body of authority holding that, at the motion-to-dismiss stage, plaintiffs need not plead the precise technical mechanics or data structures by which their protected health information ("PHI") was disclosed or intercepted.

Plaintiffs adequately pleaded their claims. Indeed, the district court expressly concluded that Plaintiffs Lash and Mees (the "Prescription Plaintiffs") submitted PHI to Eyemart through their interactions with Eyemart's website (the "Website"). ROA.390. That finding alone undermines substantial portions of Defendant's arguments in its Motion to Dismiss ("Order"). ROA.384–95.

As to whether Plaintiffs Rand, Soto, and Gottschau ("Search Plaintiffs") submitted PHI to Eyemart, Defendant's Response, like the district court's Order, relies on a single authority that is both factually inapposite and has been repeatedly distinguished by several courts. This Court should therefore find that *all* Plaintiffs adequately alleged that their PHI was disclosed to and intercepted by Meta Platforms, Inc. ("Facebook").

Because Plaintiffs plausibly alleged disclosure of their PHI to Facebook, this Court must also reconsider whether Eyemart's procurement of third-party tracking technology qualifies for safe harbor under the Federal Wiretap Act's "party exception," and whether the crime-tort exception nullifies any such protection. The Court should reject the former and apply the latter.

Defendant's Response cannot overcome Plaintiffs' well-supported arguments in their Opening Brief ("Brief") that the crime-tort exception permits Plaintiffs' Federal Wiretap Act and Missouri Wiretap Act claims (collectively, the "Wiretap Claims") to proceed because Eyemart disclosed Plaintiffs' PHI to Facebook—regardless of whether that disclosure was undertaken for "advertising purposes."

Moreover, although Defendant asserts that the "party exception" draws no distinction between a direct interceptor and a procurer of interception technology, it ignores that multiple courts have expressly raised, but declined to resolve, that precise statutory question after concluding that the crime-tort exception applied, thereby rendering any party-exception analysis unnecessary. Defendant likewise offers no reason why this Court should decline to address that unresolved issue here.

Finally, the district court improperly dismissed Plaintiffs' breach-of-contract and intrusion-upon-seclusion claims based on its erroneous conclusion that Plaintiffs failed to allege disclosure of PHI to Facebook. *See* ROA.394. Because that

conclusion warrants reversal, Defendant's Response now advances additional theories to salvage dismissal. Those arguments fail as well.

## ARGUMENT

### I. The Prescription Plaintiffs Plausibly Allege That Their Prescription Information Was Transmitted to Facebook

Defendant's Response cannot overcome the weight of authority holding that the Prescription Plaintiffs need not provide technical proof or granular evidentiary detail at the Rule 12(b)(6) stage. On a motion to dismiss, Plaintiffs' allegations must be accepted as true and all reasonable inferences drawn in their favor. *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

Indeed, Defendant does not challenge a single case cited in Plaintiffs' Brief holding that courts routinely accept well-pleaded allegations that tracking technologies embedded on a defendant's website transmitted sensitive user information to third parties, even where the precise contents of the transmission are not yet known.[1]

Instead, Defendant attempts to sidestep Plaintiffs' authority by relying on a supposed technicality—arguing that where an exhibit attached to a complaint purportedly contradicts an allegation, the exhibit controls. Resp. Br. 14. (citing *Stevenson v. Tocé*, 113 F.4th 494, 502–03 (5th Cir. 2024)). That principle has no

---

[1] *See* Resp. Br. 20–21.

application here. Plaintiffs' pageview data is, by its nature, limited and illustrative; it does not contradict Plaintiffs' allegations regarding the disclosure of PHI through the Meta Pixel ("Pixel"). Defendant's position misunderstands both pleading standards and the operation of third-party tracking technology. At the Rule 12(b)(6) stage, Plaintiffs are not required to plead facts uniquely within Defendant's or Facebook's exclusive possession. *See D'Angelo v. Penny OpCo, LLC,* No. 23-cv-0981-BAS-DDL, 2023 WL 7006793 at *8 (S.D. Cal. Oct. 24, 2023) (rejecting a motion to dismiss based on a proposed "pleading standard" that would require a plaintiff "to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the . . . defendant and its third-party recorder.").

As a practical matter, only Facebook knows the full extent of the data it received from Eyemart through the Pixel—information that can be confirmed only through discovery. *See id*. Tellingly, Defendant stops short of affirmatively asserting that no Prescription Plaintiffs' PHI was disclosed to Facebook and offers no evidentiary support for such a claim. Accordingly, the district court's ruling on this issue should be reversed, or at a minimum, Plaintiffs should be permitted limited third-party discovery to determine the scope of information disclosed to Facebook.

## II.    Search Plaintiffs Adequately Alleged They Shared PHI With Eyemart

Defendant's and the district court's reliance on *Am. Hosp. Ass'n v. Becerra* is misplaced, because *Becerra* is not a controlling or particularly persuasive authority with respect to whether the Search Plaintiffs disclosed individual, identifiable health information ("IIHI") to Facebook. 738 F. Supp. 3d 780, 788 (N.D. Tex. 2024).

The Search Plaintiffs allege the transmission of specific and identifying information to Facebook, including the Facebook ID ("FID") associated with their user profiles. This data was linked to actual interactions with healthcare websites, unlike the generalized or hypothetical information referenced in *Becerra.* Brief 25–26.

Defendant does not, and cannot, deny that Plaintiffs' FIDs were disclosed to Facebook. Rather, the facts here align more readily with *Nienaber v. Overlake Hospital Medical Center*, No. 2:23-cv-01159-TL, 2025 WL 692097, at *5 (W.D. Wash. Mar. 4, 2025), which expressly distinguishes *Becerra* and explains that an FID, unlike an IP address that merely identifies a device, can identify a specific individual and link that person to sensitive healthcare-related activity. Accordingly, Defendant's contention that the information Search Plaintiffs submitted to Eyemart does not constitute IIHI (Resp. Br. 12) cannot withstand scrutiny.

Furthermore, Defendant's ancillary argument that "Search Plaintiffs never alleged that they entered diagnoses or symptoms, or completed a transaction or

appointment request, that inherently disclosed a condition" (Resp. Br. 13) is inconsequential. Courts have repeatedly recognized that interactions with a healthcare provider's website—whether to find specific providers, filter physician directories for particular health specialties, book medical appointments, or add healthcare-related products to an online cart—can constitute disclosures of PHI, even absent the entry of diagnoses or symptoms.[2] Plaintiffs allege precisely those types of interactions here. *See* Brief 23–24.

### III.    Plaintiffs' Wiretap Claims Survive Dismissal

The district court failed to consider whether a procurer of third-party interceptor is protected by the "party exception" under the Wiretap Act before erroneously concluding that the crime-tort exception did not apply because Plaintiffs did not establish that their PHI was disclosed to Facebook. This Court should now remedy both errors.

---

[2] *See Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. Nov. 17, 2023) (search query results related to doctors, health conditions, and/or symptomology plausibly constitutes PHI*); Kane v. University of Rochester*, 2024 WL 1178340, at *7 (W.D.N.Y., 2024) (transmittal of a scheduling of a doctor's appointment constitutes IIHI disclosure*); R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 885-86 (C.D. Cal. 2024) ("*R.C. v. Walgreen*") (searching for and adding healthcare products to online cart related to certain health conditions constituted PHI disclosure); *Smith v. Loyola Univ. Med. Ctr.*, No. 23-CV-15828, 2024 WL 3338941, at *6-7 (N.D. Ill. July 9, 2024) (allegations regarding disclosure of patient status and/or information related to medical appointment and treatment location constitutes PHI "sufficient to invoke HIPAA for purposes of the ECPA's crime-tort exception"); *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24-C-1404, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) (same).

### A. The party exception does not apply here

While it is true that courts have often declined to distinguish between a direct interceptor and a mere procurer when applying the party exception, and have therefore defaulted to the view that a host website "cannot eavesdrop on communications directed at it unless such communication is intercepted for the purpose of committing any criminal or tortious act" (Resp. Br. ¶ 18), the Fifth Circuit itself has not squarely cemented that position. Defendant's reliance on non-binding authority is counterbalanced by Plaintiffs' cited cases in their Brief, recognizing that the statutory language of the party exception advises against application in situations where a party procures a third party's tracking technology and the third party, not the website, is the direct interceptor. *See Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 925 (D. Minn. 2024) ("an interceptor and the procurer/user of an interception are conceptually and legally distinct"); *see also Q.J. v. PowerSchool Holdings, LLC*, No. 23 C 5689, 2025 WL 2410472, at *11 n.3 (N.D. Ill. Aug. 20, 2025) (observing that § 2511(2)(d)'s statutory language "is at least fuzzy as to whether the party exception applies when the defendant is sued under a procurer theory, rather than as the party who intercepted the communications in question"). Therefore, whether the "party exception" applies here is now ripe for review.

## B. Even if the party exception does apply, the crime-tort exception applies to plaintiffs' wiretap claims

Courts have routinely held that a website's disclosure of protected health information to third parties for financial or commercial purposes, when done in violation of HIPAA, triggers the Wiretap Act's crime–tort exception. *See Lugo v. Inova Health Care Servs.*, No. 1:24-CV-700 (PTG/WEF), 2025 WL 905191, at *8 (E.D. Va. Mar. 25, 2025) (holding that allegations of a statutory violation, even where undertaken for financial or commercial purposes, are sufficient to invoke the Wiretap Act's crime–tort exception); *In Re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 720 (D. Minn. 2023) (allowing Wiretap Act claim to proceed under tort-crime exception where defendant allegedly used Pixel to enhance marketing efforts); *Doe v. Deaconess Illinois Union Cnty. Hospital, Inc.*, No. 3:24-CV-02284-NJR, 2025 WL 2771415, at *11 (S.D. Ill., 2025) (defendant's utilization of information collected by Pixel for marketing purposes constitutes improper recording and transmittal of IHII, sufficient to support Wiretap Act claim at the pleadings stage)); *Mekhail,* 726 F. Supp. 3d at 925 (similar).

Defendant's main contention on this issue, that "Plaintiffs never pleaded facts suggesting that Eyemart deployed the Meta Pixel 'for the purpose of' violating HIPAA or any other law" (Resp. Br. 22), is inconsequential to the Court's decision here. Indeed, even Defendant's own cited authority supports Plaintiffs' position. *See* Resp. Br. 24 (citing *Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 WL

8

580556 (N.D. Ill. Feb. 21, 2025)). In *Stein*, the court explained that "[a]s this Court sees things, the existence of a financial motivation is not a get-out-of-liability-free card. The statute does not exclude conduct simply because someone acted with a financial purpose." *Id.* at 6.

Defendant's remaining cases are either inapposite or do not constitute binding authority on this Court.[3] Consequently, Defendant has not shown that Plaintiffs are precluded from invoking the crime-tort exception here.

### C. Plaintiff Soto's claim under the Illinois Eavesdropping Statute ("IES"), 720 ILCS § 5/14-1 survives

Plaintiff Soto adequately pleaded that Eyemart violated the Illinois Eavesdropping Statute. *See* ROA.300–03 ¶¶ 253–72.

Defendant advances two flawed, responsive arguments: (1) that Soto failed to allege the use of a device in a "surreptitious" manner; and (2) that because Soto alleges only that he browsed and searched Eyemart's website, he failed to allege any "oral communication" within the meaning of the statute. Resp. Br. 23–24. Both arguments are without merit.

---

[3] *See* Resp. Br. 22 (citing *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (does not involve any HIPAA, or other similarly sensitive, private information); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021)(was explicitly rejected by the court in *Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075 (N.D. Cal. 2025)); *Doe v. Lawrence Gen. Hosp.*, No. 25-CV-10081-NMG, 2025 WL 2808055, *10 (D. Mass. Aug. 29, 2025) (non-binding precedent)).

Plaintiff Soto alleged that: (1) Facebook was not a party to Soto's private electronic communications with Eyemart (ROA.302 ¶ 265); (2) Soto believed he was communicating solely with Eyemart, intended his communications to be directed only to Eyemart, and was unaware of concealed source code that redirected those communications to Facebook (*id.*); and (3) Facebook covertly intercepted the private electronic communications and deliberately structured its source code to remain hidden within websites, thereby enabling the clandestine interception of private communications (ROA.302 ¶ 266). These allegations more than suffice to plead that Eyemart used a device in a "surreptitious" manner. Plaintiff Soto need not explicitly use the word "surreptitious" where the factual allegations clearly describe covert and concealed interception.

Second, Defendant cites *Stein* for the argument that only oral conversations are private conversations under the IES. However, as explained by the court in *Hannant v. Culbertson*, No. 4:24-cv-04164-SLD-RLH, 2025 WL 2413894 at *10–11 (C.D. Ill., 2025), the ruling in *Stein* only applies to "private conversations" as defined in section 14-2(a)(2) of the IES, as opposed to "private electronic conversations" as defined in sections 14-2(a)(3–5) of the IES. Here, Plaintiff Soto has only made claims under sections 14-2(a)(3) and 14-2(a)(5), not section 14-

2(a)(2). *Stein*'s ruling on "private conversations" is therefore inapplicable in this case.[4]

## IV. Plaintiffs' Breach of Contract Claims And Intrusion Upon Seclusion Claims Survive

In its Order, the district court declined to conduct an independent analysis of Plaintiffs' breach of contract and intrusion upon seclusion claims, holding that "[b]ecause Plaintiffs have failed to plausibly plead facts showing that any PHI was shared with [Facebook], there is insufficient factual basis to state a claim for breach of contract, breach of implied contract, or intrusion upon seclusion." ROA.394. Because Plaintiffs have adequately pleaded that their PHI was, in fact, shared with Facebook, Defendant now seeks to defeat these claims on alternative grounds. Those post hoc attempts should fail.

### A. Breach of Contract Claims

Plaintiffs have adequately pleaded that Defendant breached both its express contract with Plaintiffs, which was created by the Website Terms of Use (ROA.305–306), and its implied contract with Plaintiffs, which was formed when Plaintiffs disclosed their PII to Defendant in exchange for access to and use of the Website

---

[4] As discussed previously in Section III, *Stein*'s refusal to apply 14-2(a)(3) to the plaintiff's claims under that case is distinguishable. The complaint in *Stein* persuaded the judge that the defendant was the interceptor and was thus protected by an analog to the "party exception," whereas Plaintiffs here note that the interceptor was not Defendant itself but third-party Tracking Entities. *See generally Javier v. Assur. IQ LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. Jan. 5, 2023) (commenting on similar wiretap provision, ". . . it has always mattered who is holding the tape recorder . . . .").

(ROA.304–305). Courts have consistently upheld such allegations, and Defendant's arguments to the contrary are unavailing. *See In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 801 (N.D. Cal. 2019) (finding a breach of contract claim based on violations of Facebook's privacy policy); *Brown v. Google LLC*, No. 20-CV-03664, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) (same); *see also May v. Expedia, Inc.*, No. A-16-CV-1211-RP, 2018 WL 4343445 at *4 (W.D. Tex., 2018) (finding that the terms of use create a contract); *Chatman v. Capital One Bank* (USA), N.A., No. 5-23-CV-00408-JKP-RBF, 2023 WL 6056992 at *2 (W.D. Tex., 2023) (same).

Defendant relies on *Willingham v. Global Payments, Inc.*, No. 1:12-CV-01157, 2013 WL 440702 (N.D. Ga. Feb. 5, 2013) and *Dyer v. Northwest Airlines Corp.*, 334 F. Supp. 2d 1196 (D.N.D. 2004) to argue that the Website Terms did not create an express contract. *See* Resp. Br. 27. However, both cases are readily distinguishable.

In *Willingham*, the plaintiffs were not users of the defendant's website and did not allege that they visited the site, reviewed the terms, or relied on them in any way. The court dismissed the contract claims precisely because plaintiffs failed to plead any interaction with the website or its terms. *Willingham*, at *21. Likewise, in *Dyer*, plaintiffs failed to allege that they ever accessed or relied upon the airline's website or privacy policy. *Dyer,* at 1200.

Moreover, Defendant's argument that the Privacy Policy was not in effect when Plaintiffs visited the Website also fails. Although the Privacy Policy reflects a 2024 update date, it expressly states that it has been effective since 2016—well before Plaintiffs' use of the Website. Critically, if Defendant made any material changes to the Privacy Policy after Plaintiffs' visits, it was obligated to provide notice of those changes. *See* ROA.135-136. Defendant has provided no evidence of any such notice, supporting the inference that no material changes occurred.

Finally, Defendant, not Plaintiffs, has access to prior versions of the Privacy Policy. Yet Defendant does not assert that earlier versions omitted the representation that Eyemart is "required by applicable law to maintain the privacy of your health information." Instead, Defendant merely raises speculative questions regarding the existence of that language—questions that only Defendant is positioned to answer. At the pleading stage, such ambiguity must be resolved in Plaintiffs' favor. *See Lovick,* 378 F.3d at 437.

## B. Intrusion upon seclusion claims

Colorado, Texas, and Illinois recognize claims for intrusion upon seclusion where a defendant intentionally intrudes upon a matter that is private and where the intrusion would be highly offensive to a reasonable person.[5] Furthermore, courts

---

[5] *See Doe v. High-Tech Institute, Inc*., 972 P.2d 1060, 1065, 1068 (Colo. App., 1998); *Roberts v. CareFlite,* No. 02-12-00105-CV, 2012 WL 4662962, at *3 (Tex. App Oct. 4, 2012); *Busse v. Motorola, Inc.*, 351 Ill. App.3d 67, 70 (2004).

routinely decline to resolve at the pleading stage whether the disclosure of tracking data collected on health-related websites satisfies the "highly offensive" element. *See, e.g., Toy v. Life Line Screening of Am. Ltd*., No. 23-cv-04651-RFL, 2024 WL 1701263, at *3 (N.D. Cal. Mar. 19, 2024) (denying motion to dismiss where defendant installed Meta Pixel on a health-related website and alleged disclosure of health information was plausibly offensive); *see also In re Grp. Health*, 709 F. Supp. 3d, at 713–14 (same).

Defendant's attempt to defeat Plaintiffs' intrusion upon seclusion claims by arguing that (1) there is no intrusion where plaintiffs "voluntarily" provide information, and (2) the disclosure of PHI via tracking software is not highly offensive, fails as a matter of law.

Courts routinely recognize intrusion upon seclusion claims where users voluntarily provide sensitive information to a host website, but the website's design allows the simultaneous disclosure of that information to third parties without the user's knowledge or consent. *See In re Group Health*, 709 F. Supp. 3d at 714 (refusing to dismiss invasion of privacy claim where the health care organization's "intrusion" into patients seclusion by installing tracking tool on its website which shared patients' information with third parties was "highly offensive to a reasonable person," and patients' alleged that organization's interference was "intentional and involve[ed] sensitive health information, including communications about medical

records and diagnoses."); *Cousin*, 702 F.Supp.3d, at 974 (denying motion to dismiss for plaintiff's intrusion upon seclusion claim against defendant for sharing information about their medical condition); *Doe v. Regents of the University of California*, 672 F.Supp.3d 813 (N.D. Cal. 2023) (same). Accordingly, Defendant's contention that Plaintiffs voluntarily provided their PHI to Eyemart does not move the needle.

Furthermore, where courts do decide the "highly offensive" element at the motion to dismiss stage, they consistently recognize that individuals maintain a reasonable expectation of privacy in their health information, and that secretive disclosure(s) of such information to third parties may be highly offensive to a reasonable person. *See R.C. v Walgreen,* 733 F.Supp.3d, at 895 (finding that the disclosure of a user's health-related browsing may be highly offensive); *Doe v. Tenet Healthcare Corporation*, 789 F.Supp.3d 814, 844 (E.D. Cal. 2025) (same).

Defendant's argument on this point rests on a flawed premise—that the sensitive information Plaintiffs provided to Eyemart(and that was subsequently intercepted by Facebook) constituted "routine browsing activity" (Resp. Br. 30) and that Plaintiffs merely engaged in "passive browsing of a public website" (*id.* at 31). Plaintiffs allege the opposite: the disclosure of sensitive, identifiable health information, including prescription information. Eyemart's own declaration that it is a HIPAA-covered entity (ROA.266 ¶ 76) confirms that it handles information far

15

exceeding "routine browsing activity." Accordingly, Defendant's cited authority is inapposite. *See Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117, 1126-1127 (S.D. Cal. 2023) (finding routine browsing information non-offensive, but finding disclosure of Plaintiff's private health information as offensive); *In re Google, Inc. Privacy Policy Litigation*, 58 F.Supp.3d 968 (N.D. Cal. 2014) (finding no intrusion for routing browsing information, with no discussion of private health information).

Furthermore, Defendant's reliance on *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262 (3d Cir. 2016) ("*Nickelodeon*") (Resp. Br. ¶ 30), is misplaced. Far from supporting Defendant's position, Nickelodeon reinforces Plaintiffs' argument. There, the Third Circuit dismissed the intrusion-upon-seclusion claim against Google, a third-party analytics provider (like Facebook here), but refused to dismiss the same claim against the website operator, Nick.com. The court explained that because Nick.com expressly represented to parents that it would not collect or disclose their children's personal information, its alleged "duplicitous tactics" in doing so could support an intrusion-upon-seclusion claim. *Id*. at 268 & 295.

The same reasoning applies here. Like Nick.com, Eyemart represented that it was "required by applicable law to maintain the privacy of your health information," yet allegedly disclosed that information to third parties. Such conduct constitutes the

same kind of deceptive practices that the *Nickelodeon* court held sufficient to sustain an intrusion-upon-seclusion claim against the website owner.

## V.  The District Court Should Have Granted Leave to Amend

The district court should have, at a minimum, granted leave to amend because amendment would not be futile as to the Prescription Plaintiffs.

Amendment is futile only where the proposed amendment would not survive a motion to dismiss under Rule 12(b)(6). *MedARC, LLC v. Meritain Health, Inc.*, No. 3:20-CV-3281-N-BH, 2021 WL 11718544, at *1 (N.D. Tex., 2021). A finding of futility is not warranted here.

On this issue, Defendant correctly notes that the district court granted leave to amend as to three Plaintiffs (the Search Plaintiffs) (Resp. Br. 32), yet denied the Prescription Plaintiffs the same opportunity—even though the court expressly found that the Prescription Plaintiffs had provided their PHI to Eyemart (ROA.394). Indeed, if Prescription Plaintiffs had been permitted to amend, they would add clarifying allegations establishing that pageview data did not represent the full scope of data collected or transmitted, and that additional PHI was shared in connection with prescription-related interactions. In light of the arguments presented to this Court, such amendments would preclude dismissal and confirm that denial of leave to amend was an abuse of discretion.

## VI.  The District Court Correctly Held That Plaintiffs Have Article III Standing

In its first order on Defendant's motion to dismiss (ROA.237–247), the district court correctly held that "Plaintiffs allege an invasion of a legally protected interest that is concrete and particularized." ROA.242–43. The court further concluded that Plaintiffs' harm "is particularized because it affects each plaintiff's privacy" and that "a disclosure of IIHI is sufficient to establish a concrete harm." *Id.* Numerous courts have reached similar conclusions. *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1267 (9th Cir. 2019) (unauthorized use of facial-recognition technology in violation of Illinois's Biometric Information Privacy Act constitutes a concrete injury for purposes of Article III standing); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017) (statutory claims involving violation of plaintiffs' substantive right to privacy allege injury to a concrete interest); *Nickelodeon*, 827 F.3d at 274 (claims involving unlawful disclosure of legally protected information are sufficiently concrete for Article III purposes); *In re ESO Solutions, Inc. Breach Litig.*, No. 1:23-CV-1557-RP, 2024 WL 4456703, at *6 (W.D. Tex. 2024) ("By having their medical records exposed, plaintiffs have suffered an injury akin to those protected by the common law right of privacy."). Defendant's assertion that Plaintiffs must allege "actual downstream effects or harm" (Resp. Br. 35) is a red herring.

Moreover, Defendant's reliance on *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 820 (5th Cir. 2022), for the proposition that a statutory violation alone does not establish injury in fact misses the mark. *Perez* did not

involve the disclosure of private or sensitive health information—harms that have long been actionable at common law. *See supra; see also Doe v. Regents*, 672 F. Supp. 3d at 820 (refusing to dismiss invasion of privacy claims because "[p]ersonal medical information is understood to be among the most sensitive information that could be collected about a person."). Instead, *Perez* concerned a single instance of receiving an unwanted letter. Also, *Perez* expressly recognizes that where plaintiffs seek forward-looking relief, such as an injunction or declaratory judgment, a risk of future injury may qualify as a concrete injury for purposes of Article III standing. *Perez*, 45 F.4th at 827. Plaintiffs here do seek injunctive relief. ROA.251 ¶ 21. For these reasons, the district court's ruling on this issue should control.

## CONCLUSION

For the foregoing reasons, the district court's ruling should be reversed, and the matter remanded for further proceedings consistent with this Court's opinion. In the alternative, the district court's ruling denying Plaintiffs' claims with prejudice should be reversed to allow Plaintiffs to amend their First Amended Complaint. ROA.248–307.

Date: January 13, 2026

**FOSTER YARBOROUGH**
**KILLINGSWORTH PLLC**

By: /s/ Patrick Yarborough
Patrick Yarborough
Jeffrey Lucas Ott
440 Louisiana, Suite 1800
Houston, TX 77002
Telephone: (713) 331-5254
Facsimile: (713) 513-5202
Email: patrick@fosteryarborough.com
Email: luke@fosteryarborough.com

Mark S. Reich
Gary S. Ishimoto
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: gishimoto@zlk.com

*Counsel for Plaintiffs – Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

Date: January 13, 2026        */s/ Patrick Yarborough*
                                               Patrick Yarborough

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,220 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and by Circuit Rule 32.1

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32.1 and with the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

Date: January 13, 2026 */s/ Patrick Yarborough*
Patrick Yarborough